UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROBERT G. SWOFFORD, JR.,
an individual, and his wife,
SHARON L. SWOFFORD, an individual,

        Plaintiffs,

vs.                                  CASE NO.: 6:08-cv-00066-MSS-DAB

DONALD ESLINGER, in his official
capacity as the SHERIFF OF SEMINOLE
COUNTY, STATE OF FLORIDA;
WILLIAM MORRIS, JR., in his individual
capacity; and RONALD REMUS, in his
individual capacity,

        Defendants.
_____/

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF KENNETH WALENTINE

Defendants, Donald Eslinger, William Morris, Jr., and Ronald Remus, by and through undersigned counsel, respond to Plaintiffs' Motion to Exclude or Limit The Testimony of Kenneth Wallentine, and state:

Plaintiffs argue that Mr. Wallentine's testimony at trial should be prohibited or limited based on two arguments – that his expert report was inadequate under Rule 26(a)(2)(B) and the case management order, and that his testimony does not meet the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. Defendants address these claims in turn.

Plaintiffs contend that Mr. Wallentine's Rule 26 expert report "fails to provide detailed substantive rationale" as to opinions related to the K-9 Strike's abilities, Strike's prior performance, the reasonableness of the deputies' reliance on Strike's abilities, and the specific reliance on Strike to enter the property.

As a threshold matter, the Defendants note that the Plaintiffs continue to make the mistake of assuming that the only reason the deputies went onto the Swofford property was because Strike led them there. That is not correct and Mr. Wallentine notes this in his expert report at Section *n* on page 14. (See Expert Report of Wallentine, attached to his Affidavit at Docket 108). Mr. Wallentine states that, even if Strike had not even been present, the deputies would have been reasonable in going onto the property because Remus last saw the two suspects disappear near the fence and fleeing in the direction of the large Swofford property.

Thus, while utilizing Strike to track the suspects adds to the indicia of reasonableness to enter the property from the perspective of the deputies on scene at the time, it is important not to overstate the relevance of Strike to the issue presented, which is whether the deputies could reasonably enter the large six acre property to chase the suspects under the circumstances presented.

With that important point in mind, the Defendants oppose the Plaintiffs' motion for two reasons. First, Mr. Wallentine's report is more than adequate

under the rules and he is well qualified to provide the opinions expressed therein. Second, the Plaintiffs should be estopped from arguing that the report is insufficient due to their counsel's lack of cooperation in describing any deficiencies at an earlier point, when they first brought this up and refused at that time to identify the claimed deficiencies.

*Mr. Wallentine's Report is Adequate*

Rule 26(a)(2)(B) requires that a retained expert's written report must contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the data or other information considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

"An expert report is adequate when it is 'sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositons are avoided and costs are reduced.'" *Hines v. United States,* 2007WL 2247786, *1 (M.D. Fla. April 17, 2007). The *Hines* court was asked by the defense to strike or exclude plaintiffs' two expert reports because the reports

3

allegedly lacked sufficient facts to inform the defense of the underlying basis and reasons for the opinions. Upon review, the court in *Hines* found that the expert reports met the requirements of Rule 26, noting that the experts clearly indicated the ways they will testify and the reports provide the level of detail required by the Rule, and the defense will unlikely be surprised by the trial testimony. *Id.* at *2.

One criterion used to judge the adequacy of a report is whether it provides the opposing party sufficient notice of the experts' testimony so as to allow the opposing party to effectively depose the witness. *Vincente v. City of Rome, Ga.*, 2005 WL 6032876, *10 (N.D.Ga., June 28, 2005). An expert report should not be "vague" or "sketchy" and should provide the opposing party with sufficient notice as to the opinions to be expressed, and the bases therefore, so that the opposing party can effectively prepare for cross-examination or the retention of their own witnesses. *Acosta v. Electrolux North America, 2008 WL 5246160* *5 (S.D.Fla. Dece.16, 2008). The length of the report is not the issue – even a one page report is sufficient if it provides enough notice to the other side to meet the purposes of Rule 26. *Id.* (one page expert report sufficient).

Here, the Plaintiffs deposed Mr. Wallentine for six hours, going through his experience and qualifications and the opinions expressed in his expert report, generating 200 pages of deposition testimony. (Docket 140). As noted in greater detail below, Plaintiffs' counsel questioned him at length as to his own experience

4

with tracking dogs and as to his review of the materials in this case and the reasonableness of the deputies' actions. The report itself in this case provides ample notice to the Plaintiffs of the subject matter and basis of Mr. Wallentine's report in all respects.[1]

As to the individual criticisms, Plaintiffs claim that Mr. Wallentine based his opinion that Strike had performed well in tracking based *solely* on one tracking exercise on April 15, 2006 and a successful deployment of Strike in a prior incident. They also claim that he "cherry picked" successful episodes of Strike performing well or attaining high competition grades to justify his opinions.

First, this is an inaccurate statement of what is in his report. At pages 11 through 13, Mr. Wallentine states that Strike had achieved prestigious titles that involved tracking in Schutzund and IPO training. (Docket 108, Expert Report attached to Affidavit of Wallentine). He does cite to the specific instances noted by Plaintiffs. But, no fair reading of his report is that this is the *only* basis for his conclusion that Strike had performed well. In the documents-reviewed section of

---

[1] Plaintiffs do not appear to question Mr. Wallentine's credentials or background. He is Chief of Law Enforcement for the Utah Attorney General and is a law enforcement officer. He was formerly the Bureau Chief at the Utah Department of Public Safety, Peace Officer Standards and Training, supervising investigations into allegations of excessive use of force. He has drafted policy for that organization, and has been a certified law enforcement officer since 1982. He also drafted curriculum and still teaches at the Utah Law Enforcement Academy, including in such relevant areas as use of force and police service dog teams. He regularly teaches at the Utah State Police Academy. He was a former police K-9 handler from 1995 to 2001. He provides instruction and evaluation services for police organizations in Utah. (See Expert Report of Wallentine, Docket 4, pp. 2-3).

his report, he notes he reviewed 210 pages of K-9 training forms and 30 pages of actual search and apprehension reports. He also states that he reviewed quarterly evaluations for Strike and Deputy Morris, as a team.

In his deposition, at pages 111-113, he states that he reviewed a large volume of documents that led him to believe that Strike could track well and that Morris' reliance on him was appropriate. He further testified as to the adequacy of the training program that Strike performed, its inclusion of 100 hours for tracking training before certification of Strike, and the specific types of tracks used with Strike. (Wallentine, Docket 140, p. 123, line 11 through p. 136, line 8). Indeed, in these pages Plaintiffs' counsel engaged Mr. Wallentine in a lengthy discussion of the different means to train police K-9s to track and each time related the various methods back to Strike. Any contention that Mr. Wallentine's report or opinion is based on inadequate review of Strike's record or did not give Plaintiffs sufficient notice of its basis should be rejected.[2]

Plaintiffs argue that Mr. Wallentine did not consider instances wherein Strike did not perform well. First, the Plaintiffs do not identify those instances for the Court with any specificity and so it is difficult to gauge whether the failure to

---

[2] Plaintiffs argue later that the records of Strike aren't a legitimate basis for arriving at an opinion because Morris is the one who generates the record. This of course assumes that what he reported in the tracking materials (even well before the incident) is not accurate. Additionally, even if that mattered, Defendants submit that it goes to the weight of Mr. Wallentine's testimony, not its admissibility.

6

reference them is meaningful or dooms Mr. Wallentine's conclusions to being "wrong." Plaintiffs claim that Strike had two deployments where he did not locate suspects. That doesn't compel the conclusion he didn't track well. But, even if it did, that criticism is an issue for cross-examination of Mr. Wallentine, not admissibility of his opinions or the adequacy of his report or the validity of the basis for his opinions.

Plaintiffs argue that Mr. Wallentine's testimony that Strike did well in training could confuse the jury as to whether he was correct on this occasion. First, this argument probably manifests more than any other the Plaintiffs' fundamental misunderstanding of the issue presented as to Strike. Assuming that his presence matters in the first place, and assuming that his tracking is required to justify entering the property, the issue is not whether Strike was *actually* tracking the suspects. The Fourth Amendment issue is whether it would have *appeared* to an objectively reasonable deputy that he was and the Plaintiffs simply cannot counter the overwhelming evidence that Strike is and was an extremely well trained dog with competition-grade credentials as described by Mr. Wallentine. Nor can they dispute that Strike followed the same path that the suspects did and tried to breach the fence where Remus had seen the suspects go over it.

Plaintiffs' argument that the unfair prejudice of Mr. Wallentine's opinion outweighs its probative value on the issue of training is without merit because,

again, the issues isn't whether Strike was correct, but rather whether the deputies' belief that he was correct was warranted. Surely, if the issue comes down to whether Strike was the legal basis for going onto the property, Plaintiffs are fully capable of advancing their theories of hypothetical animals cross-contaminating the scene or starting the track at the car rather than the fence such that they can explain the weight to be given the issue to the jury.

Plaintiffs next complain that Mr. Wallentine's conclusion that Strike went from tracking to handler protection is not supported by the evidence and is not sufficiently explained. Oddly, Plaintiffs then go on to cite the very evidence that Mr. Wallentine described at deposition as to why he reached his conclusion, i.e. that Morris has explained how Strike changed his demeanor and what that signifies to Wallentine as a K-9 handler. Again, if Plaintiffs' argument is that Strike might have been doing something other than protecting his handler when Swofford confronted the deputies and brought his gun up to the ready position within 25 feet of them, they are welcome to do so. But, that would go to weight of the testimony, not to its admissibility.

Plaintiffs next confusingly state that Mr. Wallentine's opinion is that Strike led Morris and Remus onto the property, but that he does not explain why Strike's presence was immaterial to the entry. Mr. Wallentine states that Strike's presence is not central to the issue of entry onto the property because the deputies would

8

have been justified in entering the property even if Strike had not been there to track. (Wallentine report, Docket 108, p. 14, section n). Having said that, the use of Strike to track is reasonable because it provides the deputies a better chance of apprehending the suspects.

Mr. Wallentine's report and deposition provide ample justification for the conclusion that the deputies would have been justified in believing that Strike was tracking, including Strike's prior record and his behavior that night. Yet again, if Plaintiffs' argument is that they don't believe that to be true, then they can cross-examine Mr. Wallentine and take their chances trying to discredit his testimony on this point. But, as a threshold matter, Mr. Wallentine states with sufficient detail his basis for reaching his conclusions and the facts supporting them.

Plaintiffs last complain that Mr. Wallentine has testified that it would not have been possible to let Strike go to attack Mr. Swofford rather than shoot him. Their argument is that he has not provided a scientific, technical, or specialized basis for knowledge for this opinion. They complain that he has not measured how long it would take Strike to cover 25 feet.

First, the test the Plaintiffs would place on this issue – whether in fact Strike could have gotten to Swofford before he shot at the deputies – is absurd. At 2:50 in the morning, with Swofford advancing on the deputies, 25 feet away, and within one second of being able to fire on them, the deputies were not obliged to hit the

pause button, measure out the distance, and perform some tests to decide whether shooting Swofford was the correct course of action or whether they could have just let Strike go after him.

In this regard, the Court should note the following. First, Plaintiffs' own expert, Richard Ernest, has testified that Mr. Swofford was in a position, at the moment he was shot, where he could have fired on the deputies in less than one second. (Deposition of Ernest, Docket 99, p. 28, lines 7-23). Another Plaintiffs' expert, Dr. Lawrence Myers, has testified that, at the time he was being deposed, he was in the process of trying to perform such a test, but that he thought that it would take on the order of one second for a dog to cover that distance, plus or minus, and depending on the dog and conditions. (Deposition of Myers, Docket 113, p. 95, line 20 through p. 96, line 7). But, of course, it would take the deputy time to react to the situation and to manage the lead and his equipment to let the dog loose. (Id., p. 96, line 17 through p. 97, line 8).

Mr. Wallentine, in his expert report, states that, from the position of Mr. Swofford as depicted by Mr. Ernest, Mr. Swofford could have fired in a fraction of a second. (Docket 108, p. 17 of Expert Report.) Mr. Wallentine's expert opinion, as a firearms instructor, and as a K-9 handler and instructor, is that it was not unreasonable to fire on Swofford as opposed to letting Strike try to attack him. This is not just consistent with what Swofford's own experts say about the

physical evidence and the capabilities of canines, it is to a large degree based on what Swofford's own experts are saying. The basis for the opinion is clearly stated in his report and the assumption Plaintiffs make – as to the need to conduct these tests before concluding that the dog was not an option – misses the point of what would have appeared necessary and reasonable to the deputies *at the time.*

Finally, Plaintiffs should be estopped from arguing that any defense expert report is incomplete or insufficient. On December 18, 2008, weeks before any expert deposition was taken in the case, Plaintiffs' counsel called defense counsel and advised that they believed that some of the defense expert reports provided too many conclusory statements and insufficient background as to some opinions. Defense counsel asked for an explanation, or for the identity of any perceived problem areas, and Plaintiffs' counsel simply refused to elaborate further, stating that it was the Defendants' responsibility to provide reports complying with Rule 26.

On December 22, 2008, Plaintiffs' counsel wrote a letter memorializing this conversation, first articulating a number of technical issues with the reports (which incidentally were later resolved) but again making only cryptic reference to the claim that the reports, in substance, were deficient. See Exhibit "A, " p. 3. Plaintiffs' counsel gave defense counsel two days to remedy these unspecified problems. Defense counsel emailed Plaintiffs' counsel, reiterating that in the

defense's opinion Plaintiffs' counsel was obliged under Local Rule 3.01(g) to describe the alleged deficiencies. See Exhibit "B."

Rather than do this, Plaintiffs' counsel took depositions of the defense experts and waited until March to file this motion finally articulating their criticisms of the reports. In *Vincente*, one of the grounds for denial of a similar motion was that an opposing party should have brought the issue of a defective report to the attention of the Court and the other side earlier, rather than wait until the filing of a *Daubert* motion to do so. *Vincente*, 2005 WL 6032876 at *10.

Given the fact that the expert reports in this case are elaborate and that Plaintiffs have not in any way been handicapped in deposing experts or preparing for them at trial due to inadequate reports, the failure to make these criticisms known back then, so that they could be addressed between counsel at that time, should result in their rejection now.

In sum, Mr. Wallentine's conclusions are within the ambit of his expertise and his specialized knowledge. In many respects, his opinions are consistent with the expert reports of the Plaintiffs' own experts and there is no basis to exclude his proposed testimony. Given his unique experience and professional accomplishments, he is well qualified to explain the use of force and general police conduct issues in the case as they relate to the canine issues and his testimony will be very helpful to the Court and the jury in parsing those issues.

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of March 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Albert F. Tellechea, Esquire, Suzanne E. Gilbert, Esquire, Kenneth J. Idle, Esquire, and Min Ki Cho, Esquire** of Holland & Knight LLP, 2600 SunTrust Center, 200 South Orange Avenue, Orlando, Florida 32801-3461.

*/s/*

**D. ANDREW DeBEVOISE, ESQUIRE**
Florida Bar No.: 0281972
**THOMAS W. POULTON, ESQUIRE**
Florida Bar No.: 0083798
**DeBEVOISE & POULTON, P.A.**
Lakeview Office Park, Suite 1010
1035 S. Semoran Boulevard
Winter Park, Florida 32792
Email: *debevoise@debevoisepoulton.com*
Email: *poulton@debevoisepoulton.com*
Telephone: 407/673-5000
Facsimile: 407/673-5059
Attorneys for Defendants Sheriff Eslinger,
William Morris, Jr. and Ronald Remus